All right, our next case this morning is Robert, uh, I think it's Mangine, uh, against Withers. Mr. Kenney. Good morning, Your Honors. May it please the Court. Stephen Kenney for Petitioner-Appellant Robert Mangine. Everyone agrees that as a result of the Supreme Court's decision in Mathis, the petitioner in this case is wrongfully classified as a career offender. Mr. Mangine attempted to rectify this error and obtain a reduced sentence by filing a habeas petition under 28 U.S.C. 2241. The District Court denied the petition, holding that he did not satisfy the requirements for bringing it under the Savings Clause of 2255e. Specifically, the District Court held the petitioner did not suffer a miscarriage of justice because his career offender status had no impact on the length of his original sentence. But petitioner's misclassification has injured him in another way. To this day, he is categorically ineligible for a sentence reduction of up to three years under 18 U.S.C. 3582c2. Because his career offender status wrongfully deprives him of the opportunity for a reduced sentence that is afforded to him by statute, and he has no way to avoid the consequences of this legal error, the petitioner has suffered a miscarriage of justice. The government does not dispute that but for his career offender designation, the petitioner would have the opportunity to obtain a reduction of his sentence of up to three years under 3582. It's actually a combination of the statute and the Guidelines Amendment that would otherwise make him eligible for that reduction, right? Yes. Let's talk about Amendment, what was it, 782. That is correct. Amendment 782 would reduce his offense level and his guideline range by about approximately three years, the bottom of the guidelines range. And the Sentence Commission has made that amendment retroactive. So it would be applicable to Mr. Mangin's case. But career offenders are ineligible. Career offenders can be ineligible if the career offender status doesn't change the applicable guidelines range. And that is the case here because in Mr. Mangin's case, his criminal history category remains Category 6. If it were Category 5, which he would have if he were not a career offender, the guidelines range would be lower and he would be able to obtain a discretionary sentence reduction. So, as I understand it, then Mr. Mangini is asserting the miscarriage of justice is this lost opportunity to argue for a discretionary sentence reduction. Could you compare that loss of an opportunity to the line that we drew between the Narvaez and Hawkins decisions on whether you could get 2255 relief from career offender designations for guideline errors? Yes. Well, Your Honor, in Hawkins, the court made a distinction between the opportunity to obtain a discretionary sentence reduction despite the presence of legal error and situations where that legal error forecloses the exercise of that discretion. In the former circumstance, that does not constitute a miscarriage of justice, while in the latter circumstance, it does. I got a similar question. How does Hawkins help you? Can you explain that? In your view, we got a tug-of-war going on over Hawkins, right? You think it helps you or your client and the warden thinks it helps him and his client? Your Honor, certainly the result for the petitioner in Hawkins isn't helpful and doesn't apply to our case, but that's because he received a discretionary application of the 3553A factors, as well as a decision from the district court that his sentence was reasonable. Here, and in Hawkins specifically, this court drew a distinction with a previous case, Palladino, where the court found a miscarriage of justice based solely on the fact that the petitioner was denied the opportunity for a lower sentence that was afforded to him by law. The Palladino line of cases are direct appeals. That's correct, Your Honor. It was on plain error review, but as Hawkins itself indicates, the question of whether the error results in a miscarriage of justice is a question in both lines of cases, in 2255 cases as well as in plain error review cases. And the court's statements in Hawkins and Palladino went to whether a miscarriage of justice had occurred. Can I ask you a follow-up? Everyone's been dealt hard situations here. These cases are so layered. You've done a very good job with this. I want to ask you, though, about if you're successful on the 2241, so the career offender goes away, what that's going to do is that's going to enable the second step. Right? And so, in other words, the career offender is getting in the way of Mr. Mangini taking the second step to pursue a further reduction, right? That's the point. Okay. Now, my question is this. Given that it takes two steps for him to get there, okay, how is he testing the legality of his detention here within the meaning of 2255E? He has to do that in this proceeding to get to 2241. He has to test the legality of his detention. How's he doing that? He needs two steps. That's correct, Your Honor. The law entitles the petitioner to a discretionary sentence reduction proceeding, and it is illegal to continue to detain him without affording him that right. All right. I mean, all right. Yeah. I'd like to address the government's argument. The government has maintained that no miscarriage of justice occurred simply because the sentence, his original sentence, did not exceed the maximum authorized by law, and that because the court has discretion to reimpose the sentence or keep it unchanged in a 3582 proceeding, but neither of those positions is consistent with precedent. As discussed in Hawkins, the wrongful deprivation of the opportunity for a lighter sentence is enough to qualify as a miscarriage of justice, and that remains true even if the court remains free to reimpose the sentence below. That was an issue in Narvaez. That was an issue in Palladino, where the court found miscarriages of justice, notwithstanding the fact that the court could reimpose the same sentence. Additionally, the government has also argued that this would collapse the distinction between pre-Booker and post-Booker cases that was identified in Hawkins. That's not correct. That distinction is relevant only to cases challenging the length of original sentences. And moreover here, the petitioner was sentenced pre-Booker, and therefore the application of the guidelines, including the career offender guideline, was mandatory. I see that I'm into my rebuttal time. Unless the court has any questions, I'd like to reserve the remainder. That's fine. Thank you. Mr. Dean. Good morning. May it please the court, David Dean on behalf of the respondent, Shannon Withers. There's no miscarriage of justice, Your Honors, and for that reason the judgment of the district court should be affirmed. The novel argument of the petitioner on appeal is that being deprived of a totally discretionary sentencing reduction constitutes a miscarriage of justice. That's wrong under the law of this circuit for at least three reasons. First, it conflicts with controlling decisions of this court. This court has only ever found that a sentencing error results in a miscarriage of justice where the sentence imposed exceeds the maximum authorized by law. Secondly, it conflicts with the language of the habeas statute itself, specifically the savings clause, which, as Judge Scudder has pointed out this morning, requires that the petition test the legality of the petitioner's detention. That's simply not the claim that Mr. Mangin makes, so he's ineligible for savings clause relief. Well, he makes it. He just makes it in two steps. Okay. The final reason, Your Honor, why the court should not find a miscarriage of justice on these facts is perhaps the most compelling one, and that is that it would completely eviscerate this court's Davenport—the third prong of the Davenport test by essentially substituting a simple prejudice standard for miscarriage of justice. I'd like to first address the case law, Your Honor. At this point, the court has had several opportunities to address the question raised here, that being, when does an erroneous career offender classification constitute a miscarriage of justice? And the common through line through all of those cases is that where the sentence imposed exceeded the maximum authorized by law, such as in Narvaez and Brown v. Carraway, the court has found a miscarriage of justice. Conversely, where the sentence did not exceed the maximum authorized by law, such as in Hawkins or in the Millis v. Siegel case from last year, the court did not find a miscarriage of justice. Now, two cases in particular read in tandem, Narvaez and Hawkins, which have already been addressed here this morning, and make this point exceedingly clear. Those cases presented extremely similar fact patterns with one important distinction. Narvaez was sentenced pre-booker, and Hawkins was resentenced post-booker. There was a miscarriage of justice in Narvaez. There was not a miscarriage of justice in Hawkins. And the Hawkins court made very clear why it made that distinction, saying, now that the guidelines are mandatory, it can no longer be argued that Mr. Hawkins received a sentence imposed in excess of the maximum authorized by law. Thus, I think Hawkins gives us the bright line test that we're looking for this morning. If a sentence is not imposed in excess of the maximum authorized by law, there's no miscarriage of justice. And that's supported, Your Honors, by, again, the text of the habeas statute. The 2241, I'm sorry, 2255B allows relief through 2241 when 2255A is inadequate or ineffective to, quote, test the legality of the petitioner's detention. Now, Mr. Mangin cannot credibly claim that his detention is legal because his sentence that he's serving was the sentence at the bottom of the guideline range for a non-career offender. His sentence isn't illegal. So whatever his claim is, it's not a challenge to the legality of his detention. He ultimately is trying to assert a – he's claiming he's deprived of procedural rights. Isn't that – so I think what he's saying is you can – I might be wrong, okay? He's saying, no, no, no, my sentence is illegal. It's illegal. What you're arguing is that an alternative sentence would not be illegal. Meaning, right, I'm in there as a career offender. I can't be, okay? You're right because of the drug weight in the criminal history that I alternatively could have received 360 to life on the narcotics offense, okay? But that's not what happened. I, in fact, was sentenced as a career offender. That's what's illegal today. Granted, Your Honor, I think that that is the argument that's being made, and I guess the point I'm trying to make is that looking backwards at this court's precedence, the legality of a detention, particularly in a sentencing error case, always go to the legality of the sentence as imposed. It's once for always. And so to address the Palladino case, I don't think it helps the petitioner at all the way he believes it does. But as imposed, we have a career offender sentence, correct? Yes, and as the court pointed out in Millis v. Siegel, a career offender sentence which merely imposes a label is not a miscarriage of justice. I'm not talking about labels. I'm talking about the operation of the guidelines. Effectively, if the court were to grant a miscarriage of justice here, what it would be saying is that the problem for the petitioner in Millis v. Siegel is simply that he made the wrong argument, not that there was no miscarriage of justice, but that he should have said, this is going to foreclose me from ever being able to make a 3582 petition. I think going forward it's important to, because of the finality considerations addressed in the Hopkins opinion, it's very important to hold the line and say a miscarriage of justice in a sentencing error has to be as the sentence imposed. Steve, can I ask you about the position that the government is reserving in this case and your colleague in the number two case, in the Watkins case also reserved. My question is, and I understand why you want to do that. We've got the circuit split on the scope of 2241. What does a categorical application, a permissible application of 2241 look like in the government's view? I assume you're referring to the reservation argument saying that essentially Davenport was wrongly decided. Yes. So I think, Your Honor, that would look like reading the statute the way it's read, which says that believing that Congress knew what it was doing when it limited 2255, a relief, in terms of successive petitions to only, to the limitations in that statute. These are features, not bugs. I get that. But I assume you're not arguing that we should write 2241 out or the 2255E saving clause out entirely. So what would a successful case look like? Yes. I think it would look like any claim that is potentially raised in a 2255A motion is not, thus the remedy is not inadequate or ineffective to remedy that claim. I get that. I understand that, I think. But what's left? What would a successful claim look like in the government's view? Under 2241? Yes. I think traditionally 2241 was meant to challenge the fact and manner of someone's attention rather than. Sorry. Let me try it again. Okay. Let's focus in on the saving clause in 2255E. Does it describe an empty set or what would be within that set? I think it's actually very possible that it does, in effect, describe an empty set, Your Honor, because of the reason pointed out, although there's not a lot of legislative history, it's supposed that it may have been simply to avoid the constitutional requirement that it not be suspended. And subsequent Supreme Court cases. Hold on, hold on. Okay. This is a good question. All right? Might it not apply to a situation where the executive branch, forget federal criminal law, the executive branch is holding someone on a naval brig within the continental United States and is not authorizing any challenge to the detention? So you can't come in under 2255. Right, because that applies only to federal prisoners. I think that's a great example, Your Honor. Yes, I think it would. That would be a. Okay. So the question is if that's, maybe there's a whole bunch of examples, but that's one that would go in the set. But is your answer to Judge Hamilton, then, that it has no application in domestic criminal law? To a convicted defendant. Right, right. Zero. If we're talking about Title 18 convictions, it has no application. You can't hypothesize the circumstance. Doesn't exist. When a petitioner would proceed to be at 2241 rather than 2241. Right, his question. I can't think of examples right now, Your Honor. I suspect they may exist, and this is a failure of my preparation. Oh, no. I mean, look, I don't know that it's a failure of yours. I don't know if there's any answers to this. You've written a fine brief, but we're trying to understand the government's position because we're being told we're wrong. I do want to, with my remaining time, Your Honor, I do want to address something that I think is very important, and that is the way that the petitioner proposes to rewrite the third prong of the Savings Clause test, because I think it's incredibly important. The standard as coming originally from the Supreme Court and then derived from Davenport, which talked about the Miscarriage of Justice looking like something like being imprisoned for a non-existent offense, that is not the same thing as a simple prejudice standard. And yet petitioner says that he suffers a Miscarriage of Justice because he, quote, is getting tangible consequences. That's an astonishing expansion of the meaning of Miscarriage of Justice, and more importantly, this Court has already rejected it in Hawkins where the Court said, not every error is cordial in a post-conviction proceeding, even when the error is not harmless. And unless there are any further questions, I respond to a restless brief. Thank you. Thank you. Mr. Kinney. Your Honors, I'd just like to make a few brief points in response. I assume one of them is that you're not advocating us going back to the early 19th century. I am not. The 2010s and 2012s, much more recent. The government emphasized that their position that Miscarriage of Justice occurs only when the sentence is imposed in the maximum authorized by law. I would encourage this Court to look at Hawkins where it drew a distinction between a situation where the petitioner has been totally deprived of the opportunity for a lower sentence, regardless of whether the sentence that could be reimposed was above the maximum or not. That's fair, but don't you see a – I mean, that's fair. That's the right argument to make, I think. But isn't there a level of directness vis-à-vis the relief potential in Hawkins that's not here because of the necessary two-step? In other words, if you're Mr. Hawkins, right, you think, heck yes, I want the district judge to take advantage of 3553. That might bring my sentence down, right? Yes. Okay, but Mr. Mangini is not quite situated that directly. He needs to first knock out the career offender, and then he needs to come in in a second with a second motion, right, to get the sentence down lower. That's what I mean by directness. Right, Your Honor. I would argue that in this situation, they are similarly situated. Obviously, with the advisory guidelines in Hawkins, he was able to achieve that discretion, but he wanted the same thing. He wanted his career offender status knocked out, and he wanted a reapplication of the factors. But because he had already received the discretionary application of those factors, it couldn't be said that— And your point is it doesn't matter that it may come with a second motion. That's effectively, in substance, what Mr. Mangini is asking for. That's correct. He wants to knock out his career offender status and then obtain his statutory right to an opportunity for a reduced sentence and allow for discretionary application of the 3553A factors, which in 3582, the court is required to consider all of those. And that's also similar to what happened in Palladino, which is the question was simply the petitioner wanted a discretionary application that he was completely foreclosed from because of a legal error. I see that my time has expired. All right. Thank you very much. Our thanks to both counsel and Mr. Kenney. Our thanks to you and to your firm for accepting this appointment and briefing and arguing the case very easily. Thank you.